1

2   **So Ordered.**  

Patricia C. Williams
Bankruptcy Judge

3

4   **Dated: December 4th, 2013**

5              UNITED STATES BANKRUPTCY COURT

6              EASTERN DISTRICT OF WASHINGTON

7   In re:                              DC Case No. CV-12-00576-RMP

8   LLS AMERICA, LLC, et al.,           Case No. 09-06194-PCW11

9                   Debtor(s).
    BRUCE P. KRIEGMAN, solely in his
10  capacity as court-appointed Chapter 11
    Trustee for LLS America, LLC        Adversary No. 12-80075-PCW

11                  Plaintiff(s),       REPORT AND RECOMMENDATION
12                                      RE: MOTIONS FOR SUMMARY
    vs.                                 JUDGMENT (ECF NOS. 37 AND 44)
13
    WALLIN HARRISON, PLC, an
14  Arizona professional limited liability
    company,
15
                    Defendant(s).
16

17          The Honorable Patricia C. Williams, sitting in the United States Bankruptcy

18  Court for the Eastern District of Washington, hereby files this Report and

19  Recommendation regarding Defendant's Motion for Partial Summary Judgment (ECF

20

REPORT AND RECOMMENDATION RE: . . . ~ Page 1

1   No. 37) and Plaintiff's Motion for Summary Judgment (ECF No. 44) filed with the

2   bankruptcy court in this adversary proceeding.

3       This Report and Recommendation is made pursuant to the Honorable Rosanna

4   Malouf Peterson's Order on Motion to Withdraw Reference (ECF No. 2) entered on

5   October 31, 2012 in District Court Case No. CV-12-00576-RMP.

6       The Recommendation is that the Defendant's Motion for Partial Summary

7   Judgment be **DENIED** and Plaintiff's Motion for Summary Judgment be

8   **GRANTED**. The basis for the recommendation is set forth in the Memorandum

9   Decision attached hereto.

10          /// END OF REPORT AND RECOMMENDATION ///

11

12

13

14

15

16

17

18

19

20

REPORT AND RECOMMENDATION RE: . . . ~ Page 2

1

2

3

4

5

6                UNITED STATES BANKRUPTCY COURT

7                EASTERN DISTRICT OF WASHINGTON

8   In re:                                    DC Case No. CV-12-00576-RMP

9   LLS AMERICA, LLC,                         No. 09-06194-PCW11

10                      Debtor(s).

11  BRUCE P. KRIEGMAN, solely in his
    capacity as court-appointed Chapter 11
    Trustee for LLS America, LLC,             Adversary No. 12-80075-PCW

12
                        Plaintiff(s),         MEMORANDUM DECISION RE:
13                                            MOTIONS FOR SUMMARY
    vs.                                       JUDGMENT (ECF NOS. 37 AND
14                                            44)
    WALLIN HARRISON, PLC, an
15  Arizona professional limited liability
    company,
16
                        Defendant(s).

17

18         The present adversary proceeding is one of several initiated by Bruce

19  Kriegman in his capacity as the chapter 11 trustee (hereinafter, the "Trustee" or

20  "Plaintiff") for the bankruptcy estate of LLS America, LLC (hereinafter, the

MEMORANDUM DECISION RE: . . . ~ Page 1

"Debtor"). Here, Plaintiff, seeks to recover funds the Debtor transferred to Wallin Harrison, PLC (hereinafter "Defendant") during both pre- and post-petition periods. Defendant is a law firm which provided legal services to the consolidated entities constituting the Debtor in this case, as well as to several entities bearing some relationship to the Debtor, but which are not among those consolidated entities (hereinafter "Non-Debtor Entities").[1] The Memorandum Decision entered in adversary No. 11-80093-PCW, ECF No. 146, describes the Debtor's business model of dozens of interrelated entities, which includes 42 Nevada companies which were formed but were never active.[2]

The Trustee seeks to recover certain funds transferred pre-petition under the authority of 11 U.S.C. § 548(a) (1) and the "strong arm powers" of 11 U.S.C. § 544, which incorporates state law and allows a trustee to bring causes of action under the

---

[1] A list of the relevant Non-Debtor Entities is included in the Declaration of Curtis Frye (ECF No. 45). Several of those entities were owned or controlled by the husband of Doris Nelson, who controlled the Debtor pre-petition.

[2] The consolidation occurred on September 8, 2011 in the underlying chapter 11 proceeding 09-06194-PCW11 (ECF No. 771). The Memorandum Decision (ECF No. 146) in adversary No. 11-80093 states at page 3:

> The numerous other entities formed by Ms. Nelson included 42 Nevada companies and 25 Utah companies formed in 2008 for future business needs which were never active. There are approximately a dozen other entities not referenced herein which did engage in some activity. The most active, in addition to the primary entities of TSA and LLS America, include D&D Associates, LLC; 360 Northwest Telecom, LLC; and Global Edge Marketing. All were wholly owned by Ms. Nelson or family members of Ms. Nelson and all were operated from the same Spokane office.

MEMORANDUM DECISION RE: . . . ~ Page 2

1   Uniform Fraudulent Transfer Act ("UFTA"). RCW 19.40. The Trustee also seeks to

2   recover funds held in trust by Defendant at the date of filing and funds transferred

3   post-petition under the authority of 11 U.S.C. §§ 327 and 549(a). The motion filed

4   by Defendant seeks dismissal of Plaintiff's claim to recover post-petition transfers.

## I.

## FACTS

7        Between January of 2008 and a date in 2010, the Debtor retained Defendant to

8   provide legal services. Defendant primarily formed legal entities under Nevada law

9   and represented the Debtor regarding a securities fraud investigation. During its

10   representation, Defendant received funds from the Debtor and held the funds in its

11   trust account. As payment for legal services came due, Defendant withdrew the

12   funds held in trust on its own behalf. In this manner, the Debtor paid for legal

13   services rendered to both the Debtor and Non-Debtor Entities. Plaintiff's Statement

14   of Undisputed Facts (hereinafter "Plaintiff's SOF"), ECF No. 49, ¶¶ 24 and 25. The

15   Debtor and Defendant continued this practice after commencement of the chapter 11

16   bankruptcy. Defendant denies that it charged the Debtor "thousands of dollars" for

17   pre-bankruptcy planning. Defendant's Controverting Statement of Facts (hereinafter

18   "Defendant's SOF"), ECF No. 57, ¶ 31. However, Defendant does not dispute

19   statements contained in the Declaration of Curtis Frye, that Defendant was aware of

20   the Debtor's intent to commence a bankruptcy proceeding and that, as early as 2008,

se70

Defendant began counseling the Debtor on bankruptcy matters. *See* Defendant's SOF; Decl. of Frye, ECF No. 45, ¶ 16.

The dates relevant for purposes here are July 21, 2009 – the petition date – and April 21, 2011 – the date the Trustee was appointed. Approximately a year after his appointment on April 19, 2012, the Trustee entered into a series of tolling agreements with Defendant. These agreements extended Plaintiff's then existing ability to commence any avoidance action to July 20, 2012. The Trustee commenced the present adversary proceeding on July 16, 2012.

## II.

## <u>SUMMARY JUDGMENT STANDARD</u>

A party is entitled to summary judgment if the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The party seeking summary judgment must show that no genuine issue of material fact exists and the non-moving party must demonstrate there is a genuine disputed issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). More than a metaphysical doubt must be demonstrated. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

MEMORANDUM DECISION RE: . . . ~ Page 4

The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (genuine issues are not raised by mere "conclusory allegations"). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. The court must construe all facts in favor of the non-moving party and all justifiable inferences are also drawn in his or her favor. *Id.* at 255. For purposes of this decision, Defendant is considered the "non-moving party."

## III.

## PRE-PETITION TRANSFERS

Plaintiff seeks to recover only those pre-petition transfers made to Defendant for services rendered to Non-Debtor Entities. The Trustee asserts that these transfers amount to $35,881.36 and that the transferred funds are recoverable under both the Bankruptcy Code and Washington state law.

### 1. Transfers within two years of the bankruptcy filing.

A trustee may avoid fraudulent transfers of a debtor's interest in property made within two years of the date of the bankruptcy petition pursuant to 11 U.S.C. § 548(a)(1). However, as discussed more fully below, transfers for which a debtor receives a "reasonably equivalent value" are excepted from a trustee's right to

recovery. 11 U.S.C. § 548(a)(1)(B)(i). During the two years prior to the commencement of this bankruptcy case, the Debtor paid Defendant $27,493.69 to satisfy obligations of Non-Debtor Entities.

### 2.    Transfers within four years of the adversary proceeding.

Trustees in bankruptcy are also granted so called "strong arm powers" under 11 U.S.C. § 544(a). This section grants trustees the rights held by any creditor to avoid transfers under any applicable non-bankruptcy law. On November 19, 2013, the district court in its Order Granting Motion to Admit Evidence of Transfers Made by Debtor Prior to July 21, 2005, (Case No. CV-11-362-RMP, ECF No. 197) held that a cause of action exists under § 544(b) if there existed any creditor with a claim "at the time the bankruptcy petition was filed." That order concludes that there were in fact such "triggering creditors" and that the statute of limitations contained in § 544 would not have expired at the time the bankruptcy petition was filed.

Applicable non-bankruptcy law in this situation is Washington's enactment of the UFTA. RCW 19.40. Specifically, RCW 19.40.41(a) provides for recovery of transfers for actual fraud.[3] Unlike 11 U.S.C. § 548(a)(1), which pertains to transfers made within two years of the bankruptcy petition, under UFTA, the right to recover

---

[3] The prior Report and Recommendation to the district court regarding the issues of a Ponzi scheme and insolvency filed in *Kriegman v. Mark Bigelow, et al.*, No. 11-80299-PCW (ECF No. 378), adopted by the district court in case No. CV-11-357-RMP (ECF No. 92), concluded that any transfers made in the context of a Ponzi scheme constitute actual fraud rather than constructive fraud. That decision also determined that the Debtor was insolvent during the period relevant to this controversy.

MEMORANDUM DECISION RE: . . . ~ Page 6

is limited to transfers made within four years of the date of the commencement of the recovery action. RCW 19.40.091(b). Here, UFTA applies as the Debtor transferred $24,899.79 to Defendant during the four year period immediately preceding the present avoidance action.

**3.    The Trustee seeks a total recovery of $35,881.36 for pre-petition transfers.**

As discussed above, the Trustee is authorized to recover $27,493.69 for transfers occurring during the two years preceding the petition date in accordance with 11 U.S.C. § 548(a)(1) and $24,899.79 for transfers occurring during the four years preceding the initiation of this adversary proceeding in accordance with R.C.W. 141(a) via 11 U.S.C. § 544(a). As these two periods intersect, the Trustee has properly accounted for and removed all duplication that occurred during any overlap. The results reflect pre-petition funds used to satisfy obligations owed to Defendant by Non-Debtor Entities, which funds total $35,881.36. Defendant does not dispute this amount.

**4.    Reasonably Equivalent Value.**

If the Debtor has transferred property within the applicable look-back period, the trustee cannot set aside the transaction under 11 U.S.C. § 548(a) and UFTA if the Debtor received "reasonably equivalent value" or "fair" consideration in exchange for the property transferred.

MEMORANDUM DECISION RE: . . . ~ Page 7

> The reason for this requirement is obvious: if the debtor receives property or discharges or secures an antecedent debt that is substantially equivalent in value to the property given or obligation incurred by him in exchange, then the transaction has not significantly affected his estate and his creditors have no cause to complain. By the same token, however, if the benefit of the transaction to the debtor does not substantially offset its cost to him, then his creditors have suffered, and . . . the transaction was not supported by "fair" consideration.

*Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981).

> The touchstone is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the realizable commercial value of the assets transferred. Thus, when the debtor is a going concern and its realizable going concern value after the transaction is equal to or exceeds its going concern value before the transaction, reasonably equivalent value has been received.

*Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991).

Defendant maintains that a question of fact exists regarding whether the Debtor received reasonably equivalent value for the transfers of the funds utilized to provide legal services to Non-Debtor Entities. Defendant's purpose and use of the funds is not disputed. Thus, to determine whether a question of fact exists, one must examine the record to determine whether and to what extent the Debtor benefitted from the transactions in question.

Plaintiff has met his burden and introduced evidence that the Debtor transferred funds to Defendant prior to the commencement of this case in order to

MEMORANDUM DECISION RE: . . . ~ Page 8

satisfy obligations owed by Non-Debtor Entities. Defendant does not contest this fact but alleges that the funds are unrecoverable due to Debtor's receipt of fair consideration for each transfer. The assertion of such a defense shifts the burden to Defendant to produce evidence that the Debtor received the alleged fair consideration in exchange for the transfers in question. "In an action under section 548, once the trustee has met his or her burden of showing the transfer was made with the requisite intent, it is the recipient's burden to prove the existence of good faith and, as applicable, value or reasonably equivalent value." 5 COLLIER ON BANKRUPTCY ¶ 548.09[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) *accord In re Agric. Research and Tech. Grp., Inc.*, 916 F.2d 528 (9th Cir. 1990) ("Once the moving party meets [its] burden, the non-moving party must designate 'specific facts showing that there is a genuine issue for trial.'") (citing *Celotex*, 477 U.S. at 324.); *Jimmy Swaggert Ministries v. Hayes (In re Hannover Corp.)*, 310 F.3d 796, 799 (5th Cir. 2002); *Bayou Superfund LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 631 (Bankr. S.D.N.Y. 2007) ("The good faith/value defense provided in section 548(c) is an affirmative defense, and the burden is on the defendant-transferee to plead and establish facts to prove the defense."); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 805 (Bankr. S.D.N.Y. 2005); *Leonard v. Coolidge (In re National Audit Defense Network)*, 367 B.R. 207, 226 (Bankr. D. Nev. 2007) (requiring insider

defendants to prove that corporate notes to insiders were satisfied or paid in amount of transfers, and finding for trustee in absence of evidence of actual payment).

Courts have long recognized that transfers made to benefit non-debtors or even affiliates of debtors provide no direct benefit to the debtor. *Rubin,* 661 F.2d at 991; *Leibowitz v. Parkway Bank and Trust Co,* (*In re Image Worldwide*), 139 F.3d 574, 578 (7th Cir. 1998). There are situations, however, where such transfers indirectly benefit a debtor. Exchange for reasonably equivalent value is not limited to direct benefit. If indirect economic benefit can be established, clearly identified, and quantified, reasonably equivalent value may exist. *Rubin,* 661 F.2d at 991. The *Rubin* court stated:

> [A] debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person ... although "transfers solely for the benefit of third parties do not furnish fair consideration" ... the transaction's benefit to the debtor "need not be direct; it may come indirectly through benefit to a third person." (Cases omitted) If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and [the statute] has been satisfied--provided, of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.

*Id. Cf. Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d at 647; *In re Northern Merchandise, Inc.*, 371 F.3d 1056 (9th Cir. 2004); *In re Richards*, 267 B.R. 602 (8th Cir. B.A.P. 2001). The indirect benefit must be "fairly concrete." *In re*

*Image Worldwide,* 139 F.3d at 578. The transfer must preserve the debtor's net worth. *In re Rodriguez,* 895 F.2d 725 (11th Cir. 1990). Thus, it is possible that, in the absence of direct benefit, indirect economic benefit may exist and render "reasonably equivalent value."

If the hearsay statements in the Declaration of Troy Wallin ("Wallin Declaration," ECF No. 57, ¶ 10) are disregarded, there is no evidence of the purpose of some of the 29 Non-Debtor Entities involved. However, according to these hearsay statements, Defendant understood that several Non-Debtor Entities were formed to provide marketing services or other "support" for the Debtor's lawful pay day loan business.[4]

The record contains no evidence demonstrating that the Debtor received an indirect economic benefit from the pre-petition transfers. The Wallin Declaration alleges that Defendant formed at least some non-debtor entities to conduct business with and "support" the Debtor. However, there is no evidence that these entities actually supported the Debtor or even conducted business of any kind. In spite of the allegations contained in the declaration, it appears that the transfers deepened the Debtor's insolvency. Accepting these allegations as true, a mere showing that the

---

[4] As discussed in the prior Report and Recommendation to the district court regarding the issues of a Ponzi scheme and insolvency filed in *Kriegman v. Mark Bigelow, et al.*, No. 11-80299-PCW (ECF No. 378), adopted by the district court in case No. CV-11-357-RMP (ECF No. 92), such schemes rely upon the appearance of a successful legitimate business. Whether an actual legitimate business exists or the purported business is merely a "sham," the appearance or representation of a successful business is a common characteristic of a Ponzi scheme.

1   entities in question actually did conduct the proposed business and supported the

2   Debtor is insufficient to demonstrate that the Debtor received reasonably equivalent

3   value in exchange for the transferred funds. Many entities, such as a supplier of

4   office products or a provider of utilities, support and conduct business with bankrupt

5   debtors. This relationship undoubtedly assists a debtor in its business operations but

6   such relationship standing alone does not demonstrate consideration – fair or

7   otherwise – for one entity satisfying the obligations of the other. Thus, the factual

8   assertions contained in the Wallin Declaration fail to show that the Debtor received

9   reasonably equivalent value for the funds transferred on behalf of Non-Debtor

10  Entities.

11       **5.    <u>Conclusion.</u>**

12       Defendant has neither presented the requisite evidence nor alleged facts that,

13  if taken as true, are sufficient to overcome its burden. Absent such evidence, there is

14  no material issue of fact regarding the pre-petition transfer of funds. Therefore,

15  Plaintiff's motion for summary judgment should be granted. Accordingly, the

16  Trustee is entitled to recover funds for pre-petition transfers in the amount of

17  $35,881.36.

18  ///

19  ///

20  ///

MEMORANDUM DECISION RE: . . . ~ Page 12

1

**IV.**

2

**POST-PETITION TRANSFERS**

3    On the date of the bankruptcy petition – July 21, 2009 – Defendant held

4    $33,281.33 of the Debtor's funds in trust. Neither party disputes that these funds

5    were property of the estate as defined in 11 U.S.C. § 541(a). In accordance with its

6    usual practice, Defendant later applied the funds to fees for legal services provided

7    to both the Debtor and Non-Debtor Entities.

8    Also consistent with prior practice, between July 24, 2009 and September 28,

9    2009, the Debtor transferred $25,000 to Defendant for payment of fees for legal

10    services. Defendant's SOF No. 38, ¶ 2. These transfers were also utilized to pay fees

11    for services provided to the Debtor and Non-Debtor Entities. The Trustee seeks

12    recovery of both the amount held in trust on the petition date and the post-petition

13    transfer of funds – for a total of $58,281.33.

14    **1.    Post-petition fees on behalf of Debtor.**

15    In order for a professional person such as an attorney to be compensated for

16    professional services provided to a debtor, the professional must be employed by the

17    estate and the court must approve that employment. 11 U.S.C. § 327. Attorneys

18    employed by a debtor may provide services which constitute representation of the

19    debtor in matters relating to the chapter 11 or which involve a special purpose.

20

11 U.S.C. § 327(a) and (e). The Debtor, Trustee, or presumably Defendant were all in a position to obtain authorization of Defendant's representation of the Debtor.

In order to be employed as a professional, the employment arrangement must comply with several requirements, including court approval under 11 U.S.C. § 327(a). To obtain this approval, the party requesting employment of the professional must demonstrate that the professional does not hold an interest adverse to the estate and is "disinterested" as defined under 11 U.S.C. § 101(14). Fed. R. Bankr. P. 2014 sets forth the requirements for submitting an application to employ a professional person, including the requirement that the application must contain sufficient information to alert any party or the court to any question concerning "disinterest." *See* Application for Order Approving Employment, LF 2014, and Application for Award of Compensation for Services, LF 2016. In this situation, neither the Debtor nor Trustee sought approval to employ Defendant.

If employment is not approved by the court, the professional is not entitled to receive compensation for legal services. "Court approval of employment of counsel for a debtor-in-possession is *sine qua non* to counsel getting paid." *In re Shirley*, 134 B.R. 940, 943 (9th Cir. B.A.P. 1992).

In the event that a court authorizes employment, a professional seeking compensation for services rendered cannot simply withdraw funds from his or her trust account but must request further approval of the court. *See* 11 U.S.C.

§ 330(a)(1)(A). Because Defendant failed to request court approval for both employment and compensation, receipt of the $33,281.33 as compensation for legal services provided to the Debtor is prohibited. The fact that Defendant held the $33,281.33 in trust does not alter this conclusion.

Because the withdrawal of the funds held in trust on the petition date and the later transfer of $25,000 were neither authorized by the Code nor the court, the Trustee may recover these amounts.

### 2.   <u>Post-petition fees on behalf of Non-Debtor Entities.</u>

11 U.S.C. § 549(a) authorizes a trustee to void transfers of property of the estate which occur after commencement of the case and which are not authorized by the Code or the court. The Debtor allocated some portion of the post-petition transfers totaling $58,281.33 to pay Defendant's fees for legal services rendered to Non-Debtor Entities. The use of the property of the bankruptcy estate for such purpose was not authorized by the Code nor approved by the court. Because of this, the Trustee is also entitled to recovery of that portion of the transfers pursuant to 11 U.S.C. § 549(a) as discussed more fully below.

### 3.   <u>Statute of limitations.</u>

As mentioned above, the November 19, 2013 order in case No. CV-11-362-RMP (ECF No. 197) resolved any issue regarding the statute of limitations regarding claims for pre-petition transfers. However, the Defendant argues that 11 U.S.C.

§ 549(d) precludes the Plaintiff from recovering post-petition transfers. While subsection (a) grants a trustee the power to void unauthorized transfers, 11 U.S.C. § 549(d) imposes a temporal limitation on these voiding powers. Accordingly, a trustee must exercise his or her rights to recover such transfers before the earlier of two years after the transfer or the time at which the case is either dismissed or closed. The relevant date for purposes here is the two year period following the transfers in question. The Trustee initiated the present adversary proceeding on July 16, 2012, more than two years after the last post-petition transfer on September 28, 2009. As such, Defendant maintains that this recovery action is untimely. Plaintiff, on the other hand, maintains that the action is timely due to the parties' tolling agreements and the application of the doctrine of equitable tolling.

a.    The tolling agreements.

The parties entered into the first tolling agreement on April 19, 2012, followed by agreements dated May 29, 2012 and June 27, 2012. Defendant's SOF, ECF No. 38, Exs. B-1 through B-3. The agreements state that their purpose is to preserve the status quo rather than to confer non-existing rights. Collectively, the agreements toll the statute of limitations by excluding the period ranging between April 19, 2012 and July 20, 2012 from being used to calculate the deadline imposed by the applicable statute of limitations.

When the parties executed the first tolling agreement in April of 2012, the statute of limitations set forth in 11 U.S.C. § 549(d) had expired. This limitation required the Trustee to commence a proceeding to recover the transfers in question by September 27, 2011 – the date within two years of the last transfer. Again, the tolling agreements did not restore rights extinguished by the statute of limitation but preserved the Trustee's existing rights. That is, nothing in the agreements relieves the Trustee from the already expired two year deadline of September 27, 2011 imposed by 11 U.S.C. § 549(d). Thus, strict application of the limitation period would prevent recovery.

    b.    Equitable tolling.

A limitation period to commence an action for fraud may be tolled if the party holding the cause of action is, without any lack of diligence, unaware that a cause of action exists even though there has been no effort to conceal the fraud. *Ernst & Young v. Matsumoto* (*In re United Ins. Mgmt., Inc.*), 14 F.3d 1380, 1384 (9th Cir. 1994).

Both parties cite and argue the effect of *Olsen v. Zerbetz* (*In re Olsen)*, 36 F.3d 71 (9th Cir. 1994). The *Olsen* court concluded that under appropriate circumstances the statute of limitations in 11 U.S.C. § 549(d) may be equitably tolled. *Id*. at 72. The facts presented in that decision indicate that the Olsens commenced a chapter 11 bankruptcy case in the summer of 1984. The case was later converted to a chapter 7

1    proceeding and a trustee appointed in September of 1987. In March of 1989, aware

2    that the trustee was in the process of marketing real property of the estate, the

3    debtors conveyed the real property to their son. Upon discovery of the transfer in

4    October of 1991, after the expiration of the two year limit, the trustee sought to

5    avoid the conveyance. In analyzing 11 U.S.C. § 549(d), the *Olsen* court relied in part

6    on *In re United Ins. Mgmt., Inc.,* 14 F.3d at 1384-85, which, in turn, analyzed

7    equitable tolling under the statute of limitations contained in 11 U.S.C. § 546(b).

8    While the *Olsen* court discussed the debtors' reprehensible conduct, culpable

9    behavior is not essential to the court's holding. The question presented here then is

10   not whether the doctrine of equitable tolling is applicable, but whether the

11   circumstances justify its application.

12        A plaintiff who seeks application of the doctrine must first demonstrate that

13   the failure to meet the deadline imposed by the applicable statute was not caused by

14   the plaintiff's lack of due diligence. Here, the Trustee was appointed on April 21,

15   2011, approximately three months, before the deadline to commence actions under

16   11 U.S.C. § 549(d) regarding the initial post-petition transfer and approximately five

17   months before the final post-petition transfer. In the typical case, that period may be

18   sufficient for a diligent trustee to investigate any post-petition transfers. However,

19   this bankruptcy case is not typical.

20

The prior examiner appointed in the bankruptcy case had expended 21,349 hours reviewing the books and records of the numerous entities comprised of the consolidated debtor and other related entities. The records spanned 11 years and involved tens of thousands of transactions. Memorandum Decision Re: Plaintiff's Motion to Strike Declaration of Marie Rice, ECF No. 345, filed in adversary proceeding No. 11-80299-PCW. The examiner provided the results of its examination to the Trustee. Prior to the expiration of the statute of limitations of 11 U.S.C. §§ 546(a) and 549(d), the Trustee commenced hundreds of adversary proceedings against several hundred defendants seeking to avoid thousands of transfers. While the examiner likely provided the Trustee with records identifying the transfers at issue here, due to the sheer volume of the records and the complexity of the case, one cannot conclude that the Trustee's failure to meet the deadline of 11 U.S.C. § 549(d) was caused by a lack of due diligence.

The doctrine of equitable tolling also requires the Trustee to demonstrate that extraordinary circumstances exist which prevented him from complying with the statute of limitations. *Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991), rev'd on other grounds, *Seattle Audubon Soc'y v. Evans*, 952 F.2d 297 (9th Cir. 1991); *see also Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1541 (N.D. Cal. 1987) (Forti I), reconsidered on other grounds, 694 F. Supp. 707, 708 (N.D. Cal. 1988). As the doctrine is based on equitable principles, a court must consider the

conduct of both parties when analyzing this second requirement. In the case where a defendant has engaged in conduct with fraudulent intent and concealed transactions, the equities would clearly disfavor the defendant. However, that is not the current situation. The disfavored conduct at issue herein is Defendant's retention and receipt of funds belonging to the estate despite its failure to obtain court approval of either employment or compensation.

The requirement for professionals to obtain approval of employment and compensation is a critical component of a court's management of a bankruptcy case. "Control . . . is necessary to enable the court to contain the estate's expenses and avoid intervention by unnecessary participants. The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and thus aid the court in controlling estate administrative expenses." *In re Haley*, 950 F.2d 588, 590 (9th Cir. 1991) (citing *In re Willamette Timber Sys., Inc.*, 54 B.R. 485, 488 (Bankr. D. Or. 1985)).

> The rationale behind the requirement of prior court approval for the employment of professionals is to guard against abuses: "The reason for the rules relating to retention of professional personnel and the setting of their fees is to protect the estate and its creditors from unwarranted and gratuitous claims.

*In re Shirley,* 134 B.R. at 944 (quoting *In re Cummins*, 15 B.R. 893, 896 (9th Cir. B.A.P. 1981). "Failure to receive court approval for the employment of a professional in accordance with § 327 and Rule 2014 precludes the payment of

1  fees." *In re Shirley*, 134 B.R. at 944. Another purpose fulfilled by the application is

2  the revealing of any potential conflict of interest. *See In re Occidental Fin. Grp.,*

3  *Inc.*, 40 F.3d 1059, 1062 (9th Cir. 1994).

4      The purpose underlying the requirement cannot be fulfilled when the statutory

5  requirements are ignored. A trustee is entitled to rely upon a party's compliance with

6  the requirements of 11 U.S.C. §§ 327, 329, and other relevant provisions of the

7  Code.[5] In this court's opinion, it is inequitable to allow a party to ignore the mandate

8  of such provisions then permit that party to benefit from the prohibited conduct due

9  to a trustee's defensible inability to meet a prescribed deadline.

10     Application of the doctrine of equitable tolling to the statute of limitations

11 contained in 11 U.S.C. § 549(d) is appropriate in this case and Defendant's motion

12 to dismiss the Trustee's claim to recover post-petition transfers is denied.

**V.**

**PRE-JUDGMENT INTEREST**

15     Finally, the Trustee has requested an award of pre-judgment interest from the

16 date of each transfer to the date of judgment. The Code does not specify whether the

17 Trustee may recover interest in addition to the transferred property. Unlike the

18 inclusion of post-judgment interest, which is an unconditional statutory right, the

---

[5] As to the use of the post-petition transfers to pay for professional services to Non-Debtor Entities, any law firm having knowledge of the bankruptcy case should have, at a minimum, questioned whether such use was prohibited.

MEMORANDUM DECISION RE: . . . ~ Page 21

1    award of pre-judgment interest is subject to judicial discretion. Section 547 of the

2    Bankruptcy Code, which pertains to preferences, is silent on the subject of interest.

3    "Absent a specific statutory provision, the bankruptcy court may exercise its

4    equitable power to award such interest in appropriate circumstances." *In re Roco*

5    *Corp.*, 37 B.R. 770, 774 (Bankr. D. R.I. 1984). Pre-judgment interest is subject to

6    judicial discretion. *Mitchell v. Stringfellow (In re Sioux Redi-Mix, Inc.)*, 2007 WL

7    1114161 (Bankr. E.D. Okla. Jan. 11, 2007) (citing *In re Roco Corp.*, 37 B.R. at 774).

8    This court deems pre-judgment interest to be appropriate as described below.

9        a.    Interest on pre-petition amounts transferred.

10       As there are no allegations or evidence indicating fraudulent intent behind the

11   pre-petition transactions, it appears excessive to award Plaintiff interest as requested.

12   At the time of the pre-petition transfers, it is possible that Defendant had little reason

13   to question the propriety of the transactions. However, the filing of the Debtor's

14   bankruptcy petition made, or should have made, Defendant aware of the nature and

15   potential avoidability of the transactions. Accordingly, the Trustee should be

16   awarded interest on the pre-petition amounts not as of the date of the transfer but the

17   date of the commencement of the bankruptcy case – July 21, 2009.

18       b.    Interest on post-petition amounts transferred.

19       All transfers made on a post-petition basis were improper for reasons already

20   described. At the very least, the filing of the Debtor's bankruptcy petition placed

Defendant on notice to inquire into the propriety of the disbursement of the funds held in trust and disbursement of the later post-petition transfers. Defendant knew of the likelihood of a bankruptcy filing and provided legal advice regarding such an action. Defendant knew, or should have known, of the Bankruptcy Code's requirement for approval of employment and further approval of compensation. For these reasons, the equities favor an award of pre-judgment interest on post-petition transfers as well. The Trustee should be awarded interest as of the date of each respective post-petition transfer.

        c.    Interest rate.

        Rather than a punitive measure, interest is awarded to fully compensate the bankruptcy estate. Taking into account the prevailing interest rates and the absence of fraudulent intent, the Trustee should be awarded interest at the applicable federal rates on the dates referenced above. That is, as of the date of the bankruptcy petition for all funds transferred on a pre-petition basis and the date of each transaction for all funds transferred on a post-petition basis.

## VI.

## CONCLUSION

        For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be **GRANTED** and Defendant's Motion for Partial Summary Judgment **DENIED**. Accordingly, Plaintiff should be awarded a total of $35,881.36 for amounts

1    transferred prior to the commencement of the case and prejudgment interest on this

2    amount at the applicable federal rate and beginning on the petition date. Plaintiff

3    should also be awarded a total of $58,281.33 for the amounts transferred subsequent

4    to the commencement of the case and prejudgment interest at the applicable federal

5    rate beginning on the date of each transfer.

6                     ///END OF MEMORANDUM DECISION///

7

8

9

10

11

12

13

14

15

16

17

18

19

20

# Notice Recipients

District/Off: 0980−2            User: wendyi              Date Created: 12/4/2013
Case: 12−80075−PCW           Form ID: pdf002            Total: 4

**Recipients of Notice of Electronic Filing:**

aty       Daniel J Gibbons        djg@witherspoonkelley.com
aty       Jody M McCormick         jmm@witherspoonkelley.com
aty       Michael J Paukert       mpaukert@pt−law.com
aty       Shelley N Ripley        snr@witherspoonkelley.com

                                                                         TOTAL: 4